[Tagged]



**ORDERED in the Southern District of Florida on June 6, 2016.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                    **CASE NO. 14-17616-EPK**
                                          **CHAPTER 7**
Joe Kelly Bloomer,

     Debtor.
_____/
Deborah C. Menotte, as Chapter 7
Trustee for CLSF III IV, Inc, et al.,

     Plaintiff,
v.                                        **ADV. PROC. NO.  15-01357-EPK**

Joe Kelly Bloomer,

     Defendant.
_____/


**ORDER DENYING MOTION TO VACATE DEFAULT JUDGMENT**

    **THIS MATTER** came before the Court for hearing on May 5, 2016 upon the

*Defendant's Motion to Vacate Default Final Judgment* [ECF No. 22] (the "Motion") filed by

Joe Kelly Bloomer (the "Defendant").

1

On August 24, 2015, Deborah C. Menotte, as Chapter 7 Trustee for CLSF III IV, Inc, et al. (the "Plaintiff"), obtained a final default judgment against the Defendant.  In the Motion, the Defendant argues that his prior counsel, Daniel Brinley, assured the Defendant on numerous occasions that he was handling this adversary proceeding and that, instead, Mr. Brinley took no action and a default judgment was entered against the Defendant.  The Defendant argues that because the default judgment was entered as a result of Defendant's counsel's failure to act on his behalf, there is excusable neglect and the default judgment should be vacated under Fed. R. Civ. P. 60(b), made applicable here by Fed. R. Bankr. P. 9024.

At the hearing on the present Motion, the Court asked the Defendant's current counsel whether he was arguing that Mr. Brinley committed fraud against the Defendant, or whether he was arguing that Mr. Brinley was negligent or grossly negligent.  Current counsel stated that the Defendant was not arguing that Mr. Brinley committed fraud but was negligent or grossly negligent, which led to entry of default and default judgment against the Defendant.

After the hearing, the Defendant filed a *Notice of Supplemental Filing and Request for Judicial Notice* [ECF No. 28] (the "Supplement").  In the Supplement, the Defendant states that, after the hearing on the instant Motion, Defendant's current counsel was approached by another attorney who informed him of two other cases of alleged misconduct by Mr. Brinley.  In the Supplement, the Defendant states that Mr. Brinley appears to be taking fees without performing services, then fails to inform or misinforms his clients in order to delay the proceedings, and that these actions constitute fraud and not just negligence or gross negligence.  Yet such concerns were not news to the Defendant even before the Motion was filed.  The Motion itself details another case, filed in 2014, in which Mr. Brinley began as debtors' counsel and the Defendant's current counsel eventually took

over to "attempt to undo the damage that was done by Brinley in that case".  The Motion states that, during the investigation of that other case, it was determined that Mr. Brinley had been suspended from the practice of law.  The Motion states that the suspension was for, among other things, "misrepresentation to clients regarding the status of their cases".

It is not proper for the Defendant to present a new rationale for the relief requested in the Motion, in the form of the Supplement, which was filed after the Court held a hearing on the Motion.  It is apparent from the Motion itself that the Defendant knew of Mr. Brinley's reputation for lack of diligence in other cases.  Yet the Defendant specifically disavowed the argument raised in the Supplement—that Mr. Brinley was not just grossly negligent but committed fraud on the Defendant—when asked about it at the hearing.  The Supplement represents an impermissible second attempt to frame the Motion.  But even if the Court considers the Supplement, for the reasons set out in more detail below, the Motion would be denied.

The Court may set aside a final default judgment under Rule 60(b). Fed. R. Civ. P. 55(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7055.  Fed. R. Civ. P. 60(b)(1), made applicable to this adversary proceeding by Fed. R. Bankr. P. 9024, provides that the Court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect."  Such a motion must be made within a reasonable time, no more than a year after entry of the judgment. Fed. R. Civ. P. 60(c)(1). The present Motion is timely.

To strike a balance between the strong policy of determining cases on the merits and the policy in favor of finality, a defaulting party seeking relief based on excusable neglect must show "(1) [he] had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *SEC v. Simmons*, 241 F. App'x

660, 663 (11th Cir. 2007) (per curiam).  Whether neglect is excusable is an equitable determination, taking account of all relevant circumstances including the danger of prejudice to the opposing party, the length of delay and its potential impact on judicial proceedings, the reason for delay including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  The Eleventh Circuit is wary of granting Rule 60(b)(1) relief based on claims of attorney error.  *Simmons*, 241 F. App'x at 664.  "At the very least, a party must demonstrate his own diligence, even where the attorney commits gross misconduct." *Id.*

The Motion also cites, without further analysis, the so-called "catchall" provision of Rule 60(b):  The Court may relieve a party from a final judgment for "any other reason that justifies relief". Fed. R. Civ. P. 60(b)(6).  Relief under Rule 60(b)(6) is available only "upon a showing of exceptional circumstances." *Simmons*, 241 F. App'x at 662-63 (citations omitted).  In *Simmons*, the Eleventh Circuit Court of Appeals, citing precedent, noted that attorney error—even gross negligence—may not be considered an extraordinary circumstance warranting relief under the "residual equitable authority" contained in Rule 60(b)(6). *Simmons*, F. App'x at 663.  Claims of attorney error must be made under the more specific Rule 60(b)(1).

Whether the Motion proceeds under Rule 60(b)(1) or Rule 60(b)(6), however, clients are held accountable for the acts and omissions of their attorneys. *Pioneer Inv. Servs. Co.*, 507 U.S. at 396.  This is because the client freely selects his agent and must suffer any consequences that may result from that agency relationship. *See id.* at 396-97.

The United States Supreme Court has, in two capital *habeas corpus* cases, distinguished attorney negligence from more serious instances of attorney misconduct that

may be considered egregious and amount to an extraordinary circumstance. *See Maples v. Thomas,* 132 S. Ct. 912 (2012) (cause for state court procedural default); *Holland v. Florida,* 560 U.S. 631 (2010) (equitable tolling of federal filing deadline).  The latter conduct, if it amounts to the attorney abandoning the client, may sever the principal-agent relationship and constitute extraordinary circumstances beyond the client's control.  However, as at least one circuit court notes, the concerns of litigation in the *habeas corpus* context differ greatly from considerations in normal civil litigation. *Choice Hotels Int'l, Inc. v. Grover,* 792 F.3d 753, 756 (7th Cir. 2015), *cert. denied,* 136 S. Ct. 691 (2015) ("[D]amages for malpractice are a poor substitute for time in prison, just as they are no substitute for one's life. . . . [T]he Supreme Court has not suggested that *Holland* or *Maples* has any bearing on suits about torts, contracts, and other economic matters.")  "[A]lthough abandonment by counsel ends the agency relation—a consideration relevant to all litigation, not just to collateral review,—the fact remains that civil litigants are responsible for their own choices and their own inaction. Litigants who know or strongly suspect that their lawyers are asleep on the job must act to protect their own interests by hiring someone else." *Id.* (internal citation omitted); *see also Moje v. Fed. Hockey League, LLC,* 792 F.3d 756, 759 (7th Cir. 2015) (Rule 60(b)(1)).

In his affidavit submitted in support of the Motion, the Defendant states that on or about May 4, 2015, Plaintiff's counsel sent a draft complaint to Mr. Brinley, which was forwarded to the Defendant the next day.  The Defendant states that he immediately responded on May 5th and had additional communications with Mr. Brinley on May 6th. The Defendant states that he requested a telephonic conference with his wife's attorney or with Mr. Brinley regarding a proof of claim filed in the Defendant's case as well as the potential adversary proceeding, and that call took place on May 15, 2015.

The Defendant states that the Plaintiff filed the adversary proceeding on May 21, 2015, that the answer deadline was June 22, 2015, and that the Defendant spoke with Mr. Brinley and was assured that an answer would be timely filed. The Defendant states that on June 30, 2015, he sent Mr. Brinley an e-mail to confirm that a response had been filed and asked for a copy. The Defendant states that "sometime thereafter", Mr. Brinley informed the Defendant that he had not filed a response but had obtained an extension from the Plaintiff and that it was being taken care of.

The Defendant states that on or about July 22, 2015, he received a copy of the Plaintiff's motion for default final judgment[1] and contacted Mr. Brinley for an immediate meeting, which was held July 23, 2015. The next day, on July 24, 2015, the Defendant states that he sent an e-mail to Mr. Brinley confirming that the matter would be taken care of and that the Defendant would attend the hearing set in August on the motion for default judgment. The Defendant states that Mr. Brinley communicated to him that the matter had been handled and that he did not need to attend the hearing in August.

The final default judgment was entered on August 24, 2015.

The Defendant states that about this time he had difficulty contacting Mr. Brinley. The Defendant states that when he finally got ahold of Mr. Brinley, Mr. Brinley told the Defendant not to worry, that he had a year to appeal, and that the matter would be resolved.

The Defendant states that on December 29, 2015, Mr. Brinley sent an e-mail informing the Defendant that he had received his discharge. The Defendant states that he again expressed to Mr. Brinley his desire to have the default final judgment challenged as the Defendant believed all of the allegations in the complaint to be false and that he did not

---

[1] The Court notes that the Clerk of Court entered a default against the Defendant on July 6, 2015 and a copy of that entry of default was mailed to the Defendant on July 8, 2015.

commit any type of fraudulent activity.  The Defendant states that at this point he realized that Mr. Brinley was not going to protect his rights and so he contacted his wife's counsel, now the Defendant's current counsel, and met with him in January, 2016.  The Defendant learned from his current counsel that Mr. Brinley had a reputation for poor service to clients.

The Defendant, his current counsel, and the Plaintiff met in February, 2016 to attempt to resolve all issues.  When they did not reach resolution, the Defendant and his current counsel began gathering the necessary documentation to support the present Motion.  The Defendant met with his current counsel several more times to go over all of the facts and circumstances of the case for purposes of filing the Motion.  The Defendant states that it was always his intent to defend the allegations in the complaint and that he had been assured by Mr. Brinley throughout that his rights were being protected.  The Defendant states that "[e]very time a problem occurred, he assured me it was an error and it was being taken care of" and the Defendant believes he was misled by Mr. Brinley.

The present Motion was filed on April 7, 2016.

The Defendant argues that he was deceived about the status of this litigation by his own counsel.  But the Defendant cites no precedent, and the Court was unable to find any precedent, that would distinguish attorney negligence or gross negligence from the type of conduct alleged by the Defendant, for purposes of Rule 60(b) in the context of a civil action such as that before the Court.  The Defendant does not allege (and the allegations do not support a finding) that Mr. Brinley's actions fell outside the scope of his employment.  Even if the standard found in the *habeas corpus* cases applied in this type of civil case, the actions described do not amount to abandonment of the attorney-client relationship. Although Mr. Brinley may have been difficult to contact at times, he was communicating with the Defendant about the Defendant's case as late as December, 2015.  While Mr.

Brinley was certainly neglectful in how he handled the Defendant's case, his actions were not excusable within the meaning of Rule 60(b). The Defendant must abide by the consequences of Mr. Brinley's actions (or inaction) in this case. *See Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.,* 570 F.3d 845, 848 (7th Cir. 2009) (stating that, even for purposes of the more extraordinary relief under Rule 60(b)(6), "[d]eception of a client becomes the liability of the client's attorney and not the client's opponent"); *see also Bohannon v. PHH Mortg. Corp.,* No. 1:12-CV-02477-RWS, 2015 U.S. Dist. LEXIS 30742 (N.D. Ga. Mar. 12, 2015) (neither Rule 60(b)(1) nor Rule 60(b)(6) relief was warranted to reverse dismissal of plaintiff's complaint due to attorney's willful misconduct; facts—including misrepresentation to client—demonstrated attorney error and not exceptional circumstance).

Even if the attorney-client relationship terminated such that the Defendant should not be held responsible for Mr. Brinley's inaction, which is not the case here, the Defendant's own actions do not constitute excusable neglect. The Defendant's affidavit does not clearly describe how long after the August, 2015 hearing on the motion for default judgment he spoke with Mr. Brinley. It appears that several months transpired with no inquiry at all. Despite the Defendant admittedly being unable to contact Mr. Brinley and despite the Defendant's knowledge that a hearing took place on a motion for default judgment in August, 2015, the Defendant did not take any action to remedy the situation until December, 2015, some four months later. The Defendant's inability to contact Mr. Brinley "should have alerted him of potential problems in his representation." *Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993) (per curiam). The Defendant "had a duty to monitor the progress of the case, communicate with [his] attorney, and to inquire of the Court as to the status of [his] case in the event [he was] unable to contact [his] attorney. *Ake v. Mini Vacations, Inc.*, 174 F.R.D. 110, 112 (M.D. Fla. 1997). Here, the

Defendant, though obviously aware of problems with his counsel, waited months before he even began to try to remedy the situation.

Even if the Defendant's inaction regarding Mr. Brinley was reasonable, the Defendant spoke with his current counsel in January, 2016.  The Defendant and his current counsel realized they would not be able to settle the matter with the Plaintiff in February, 2016.  But the instant Motion was not filed until April 7, 2016, about two months after the Defendant knew the matter would not be resolved with the Plaintiff, and more than seven months after entry of the default judgment.  The only explanation provided is that the Defendant was gathering materials to support the instant Motion.  But an "inexplicable delay in filing a motion to vacate after learning of a default judgment precludes relief under Rule 60(b)(1)."  *SEC v. Simmons*, 241 F. App'x 660, 664 (11th Cir. 2007) (per curiam) (citing cases).

The Trustee obtained the default judgment against Mr. Bloomer in the middle of 2015 and thereafter began pursuing collection.  After such a lengthy delay, it is prejudicial to the Trustee to be put back in time to a point prior to commencement of those efforts.

In the Motion and accompanying affidavit, the Defendant attempts to describe his defenses to Counts I and II of the complaint, stating factual allegations inconsistent with those alleged in the complaint.  That the Defendant may have had defenses in this action does not outweigh the substantial delay in bringing the current Motion or the prejudice to the Trustee who has acted in reliance on a properly entered default judgment.

Considering all relevant circumstances, including the length of the delay and its potential impact on judicial proceedings, the fact that the delay was within the reasonable control of the movant in this case, and the danger of prejudice to the Plaintiff, the Motion will be denied.

Accordingly, it is ORDERED AND ADJUDGED that:

1.    The Motion [ECF No. 22] is DENIED.

2.    The *Plaintiff's Motion to Strike Defendant's Notice of Supplemental Filing and Request for Judicial Notice* [ECF No. 29] is DENIED as moot.  The hearing set on this motion on June 15, 2016 is canceled.

###

Copies Furnished To:
Leslie S. Osborne, Esq.

*Leslie S. Osborne, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and to file a certificate of service with the court.*